Good morning. I am Eric Parkinson. I am counsel for the plaintiff appellant Louis Peterson. In preparing for oral argument today, I've realized that I really don't have anything additional to add to the briefing that's already before the court. Really, my goal here is simply to clarify a few points. And I want to talk first about this concept of de minimis injury that the defendants, the appellees, have raised. Appellees claim that Peterson's injuries were minimal. Of course, the proof before the court contradicts this, which means that my client prevails on that issue. What medical testimony or record or anything confirms his injury? Well, Your Honor, respectfully, I don't believe medical testimony is required. That doesn't answer my question. That's just going to the second question. What medical record or testimony confirms his injury? The medical record is that he did visit an orthopedist who x-rayed his shoulder. But do we have anybody who says he had injury besides him? Besides the plaintiff? Yeah. No, Your Honor, we don't. So if we don't have anybody who says he has injury besides the plaintiff, then at that point, how do I get around Arpin v. Santa Clara Valley, where it says the plaintiff has no case because he has no support in the medical records to show that he suffered injury? Because that, I would argue, Your Honor, that the absence of injury, if indeed that's true, and my position is that it's not. Did you look at Arpin? Yes, I did, Your Honor. Well, so how do I get around that? That's one of my court's findings, and I'm dead on with it. I can't get around it unless I throw on bunk. I think the court looks at it as an evidentiary issue, that the absence of injury is a fact that the jury could have considered to determine whether or not excessive force was used. Well, no, that's not it. The question is whether or not he makes a prima facie case of a claim of excessive force in the absence of injury. Yeah, and I think the Ninth Circuit precedents don't require an injury, first of all. Well, Arpin comes pretty close to saying if he can't show injury, there is no case. But that, I think, conflicts, Your Honor, with the other case law that I've cited that says that actual injury is not required, that there can be nominal damages. Most of those cases are from out of circuit, though, are they not? No, there are some that are from our circuit, Your Honor. But in those cases, wasn't the injury still readily apparent months later, like the lump on the wrist? You had bruising on the wrist that was apparent three to four days after the handcuffing. You had a shoulder injury, a soft tissue injury that was still present a year after the arrest. And you had emotional distress damages that were injuries that were ongoing up until the first anniversary of the arrest as well. His emotional distress damages or symptoms, I guess, would be crying excessively after the incident. Well, I think they're compensable injuries. They're shock to his system, both mentally and emotionally. He never went to a mental health counselor, psychiatrist, psychologist, did he? That's true. I mean, doesn't the Supreme Court in one case say, Atwater, I think, that says, look, I mean, being upset pursuant to a lawful arrest is just normal. I mean, you can't claim emotional anxiety because you were arrested. Respectfully, Your Honor, there was no allegation in Atwater that there was any injury, physical injury, as in this case. One thing we're going to have to wrestle with is let's assume we take your man at face value that for three or four days after being handcuffed, he had some bruises on his wrist. Which I think the court has to. All right. But the question is, is that de minimis? Because whenever, if you're lawfully arrested, it's certainly okay to handcuff you, right? And if you're handcuffed, a lot of times, yeah, I mean, I guess there can be a little bit of bruising. I would argue that in this case that handcuffing was a level of force that was not warranted, Your Honor. Well, he's making a full physical custody arrest for a misdemeanor that was committed in his presence. And as I read the California statutes, that's discretionary with the officer, particularly where the arrestee has no identification. That's discretionary, Your Honor, but I believe the statutes distinguish between, there's a fine line between how that arrest is to be effectuated. Is it to be just like in this case, the way it should have been, would have been a verbal command to stop, which he did, and a citation issued. Your man had no identification on him, did he? He was just in shorts and tennis shoes, right? He was jogging? That's correct, but he also managed to give the arresting officer a plethora of information that the officer could have verified simply by calling the Cal DOJ. But you're asking us to declare as a matter of law that it was unlawful for the peace officer in this case to take him in, in order to clear up the question of his identity and actually physically book him at the jail until he was released a few hours later. Well, I'm asking this court to simply follow the Graham analysis and to look at the level of force that was used. But if he's permitted to make a full physical custody arrest, the Supreme Court told us in Saussure that some amount of force is inherent in making a full physical custody arrest. In that case, they were loading Mr. Saussure into the police van when he banged his knee. Sure, but the statutes in California, I don't think, give that much discretion to the police officer. Well, they use the word discretion, don't they, in terms of whether or not – doesn't Penal Code 853.6 say that?  853.6. I'm looking at subsection G. The officer may book the arrested person at the scene or at the arresting agency prior to release. Right, and that assumes – that's another point that actually I'd like to mention, that the statute in its context, in that particular subdivision in particular, Your Honor, required that the arresting agency do the booking. Well, he is the arresting agency. He did not do the booking, though, Your Honor. He simply dumped him at the San Luis Obispo County Jail. Well, isn't that booking? No, that's not booking. The agency – the jail actually did the booking. Now, if there was some arrangement delegating that authority to the jail – Well, he delivered him to the custody of the sheriff, who was the custodian of the jail, and it was the sheriff's personnel who processed the paperwork. But I just don't see the distinction that you're making. Well, the distinction – Well, let me ask you another question. Okay. Under 8, subsection H5 – I guess it's I-5, one of the factors that the officer is permitted to consider in deciding whether or not to cite and release at the scene is the person could not provide satisfactory evidence of personal identification. Yes, that's true. That's what the statute says. Right. And so why can't the officer say, Look, I've got a half-naked man with no identification on his person. He says who he is, but I don't have any way to verify that, so I'm going to take him down to the county jail, and when we've satisfied ourselves that Mr. Peterson is who he says he is, then we release him. And that's my point. Isn't that what the statute authorizes? The statute does indeed authorize that, Your Honor, but satisfactory evidence, I would argue in this case, is a question of fact. Because I said so? No, simply because my client was able to provide not just his name, his address, his driver's license number, his Social Security number. How could the officer verify that? He testified in his deposition that all he had to do was call the Cal DOJ. He gets on the phone with them. He gives them the driver's license. They tell him his description. Why did he have to do it at the scene when the statute says you can book him and then release him later after you've satisfied yourself that he is who he says he is? Because, again, if the booking was going to be done, the booking had to, in the context of this statute and the specific subdivision that you've mentioned, the booking had to have been done by the arresting officer. The arresting agency, it says, repeatedly. I hear your argument. I just don't understand the law that way, Counsel. That's not how I read the statute. I guess we disagree on that point. If, in fact, there is no constitutional violation, then there is no Monell claim, correct? That is correct, Your Honor. What's your best argument that this person is a state actor? Best argument is that his function. Taking into consideration all of the case law that I've got to look at for state actor, make my best argument. And you're looking at the wrong brief. You should be looking at mine, Your Honor. No, I'm just looking at what they said, and I've also looked at yours, and it's also open if you knew. We do read your brief. Oh, I know. I know, and that's why I mentioned. I'm just reading this red one, which hops on top because you're up. Wait until he gets up, and then yours will be on top. Understood. The best argument I have that he is a state actor is that everything he did parallels the responsibilities and duties of a police officer. We have a lot of case law that says just because there are more than opportunity to arrest, so arrest is not enough. So what authority did he have besides arrest that makes him a state actor? Well, arrest is a pretty big authority, and it extends throughout the state and across state lines according to the federal statute I cited. He was also dressed in a police uniform, carried a gun, handcuffs, obviously had the ability to take this person to the county jail. He also had the ability to do one thing, which you've kind of poo-pooed lately in your argument, which seems to be an added help for you when it comes to state actor, and that's the authority to book. Right. He does have the authority to book. The fact is he didn't book him himself. But he had the authority, correct? Yes, sir. That would make your argument about state actor pretty good or better, and yet you seem to suggest, well, because he didn't do it, it's not enough. Well, respectfully, no, that's not what I'm arguing. I'm saying that he did have the authority to book. Why didn't he do that as required by the statute? The statute, 853.6, it says that he has the ability to book. The defendant has to be booked by the arresting agency. He was not booked by the arresting agency. That doesn't speak to his power or his authority to book the individual. Mr. Parkinson, you're two minutes over your time. Let's hear from the relevant. Thank you. Thank you. Just to help counsel to know that I've also got his brief, I'm showing you. Good morning, Your Honors. Thomas Kroeger on behalf of respondents. The notion of whether or not there has to be a beyond de minimis injury is, in fact, in my view, crucial to the case. And quite frankly, when you're dealing with what is a permissible method of force, that is a body hold and handcuffing, the inquiry then needs to focus, and really here the dispute should be, was the degree of force too much as opposed to the method itself? In our view, Officer Zatt was well within his rights, upon witnessing a misdemeanor committed in his presence, to both detain verbally but also physically detain Mr. Peterson. Given that, the question then is, did he use these permissible methods too harshly? And in the absence of any objectively verifiable physical injury, serious physical injury, the answer to that is no, you cannot find excessive force. And it only makes sense because otherwise, any time someone gets handcuffed, if they didn't have to show some objective indication of substantial beyond de minimis physical injury, you would have an excessive force claim. They would end up before the courts, which they would have to adjudicate. So the rules and the decisions recognizing the need for some level of injury beyond de minimis in these types of cases is logical and workable. Here though, Mr. Peterson, as soon as he was handcuffed and put in Mr. Zatt's car, complained about the handcuffs being too tight, did he not? Yes, he did. He asked several times for them to be loosened, and the officer didn't do it while he was filling out papers. It was 20 minutes later before he finally loosened the cuffs. Is that true? That is Officer Zatt's best estimate. That's true, Your Honor. Okay, so maybe he should have loosened them five minutes later, or the first time Mr. Peterson complained. Well, if we assume he should, he did, in fact, loosen them at one. But if you want to say, well, should he have loosened them earlier, the fact of the matter still is that there's no evidence of any injury beyond de minimis. He complained of, I had some bruising around my wrists for three or four days afterwards. Do you have a case on point you can cite as where that, in fact, has been determined by a court to be de minimis? Well, Your Honor, for example, Saussure mentions that concurrent with any arrest, some level of injury can occur, and that doesn't automatically then make it excessive force. That was the bump-the-knee case? Yes. All right, but you have bruising from tight handcuffs for three or four days being de minimis, and therefore not a 1983 action. Not specifically, Your Honor. So you want this to be the first case? Yes, but, Your Honor, it is recognized that there are instances where an injury can occur attendant to legal force used to arrest, and the fact that there is some injury does not equate to excessive force. What about his emotional harm, crying and bawling for weeks on end? Again, recognizing that water, upset is a naturally attendant result of an arrest, of a legal arrest. The fact that he was upset because he was arrested does not indicate or does not necessarily lead to the conclusion that excessive force was used. What are you going to do with Palmer v. Sanderson, Judge Preggerson, 9-5-3rd? The problem with Palmer, Your Honor. I mean, it seems to me that I got quite a few cases. I say Preggerson, I say Reinhardt. We know what the cases are, but they're pretty much on de minimis. They are. The injuries in the various cases cited by plaintiffs, including Palmer, Wall, Lalonde and Alexander, there was substantially more force used. Both in Wall and Alexander, the plaintiffs claimed that they were physically attacked. In one case, the legs were kicked off from underneath them. In the other case, slammed face first into the car. And in all of those cases, we respect. Not in Palmer, was it? Palmer, no. In Wall and Alexander, there were claims that they were physically attacked. I can understand Wall. I can even go with Meredith. But I'm looking direct at Palmer. Well. How do I distinguish Palmer? Because in Palmer, there were objective indications of substantial injury beyond de minimis as a result of the use of the handcuffs. What were the objective indications? If I recall Palmer correctly, that was a case where even at the time the... I'm pretty interested in Palmer because it comes from a close place to where I am, Pocatello. He alleged that they were placed so tightly, they actually caused the wrist to become discolored and resulting in swelling and bruises, which lasted for several weeks, which is not what is claimed here. So the quantum of injury, the degree of injury is alleged to be beyond de minimis. And that's... You're really going then as we have to evaluate on a case-by-case basis what this excessive force is? Yes, Your Honor, because I don't believe you can make a bright-line test. You have to look at the objective evidence of the existence of excessive force. Well, why don't we just follow the Sixth Circuit's decision, which basically did say that there has to be an actual injury? That would still require the court, if I understood the question correctly, it would still require the court to do an individual examination. But I think those... But if we find that there's no actual injury, then that's a bright-line rule. That's a bright-line rule. But you still need to do, in answer to the question, the court would still need to look, either trial or appellate courts, are still going to have to look at, okay, what is the objective evidence of an injury and whether that injury is beyond de minimis. I should have checked this in Zat's deposition, but did he single lock or double lock the handcuffs? I don't know that it's in the record, Your Honor, but I will represent to the court that he's testimony. Let me take that back. It's either in the record or it isn't. I don't believe he was ever asked that question in deposition. That's why it's not in the record. So I don't want to make any representation. We don't know if Mr. Peterson was squirming around in the back of the car tightening his own handcuffs or not. I know, but it's not in the record. Well, it will remain a mystery. Your Honor, I would like to address briefly the issue of the 853.6g. Now, the statute makes it very clear that an officer has, upon arrest, has the option to book the arrestee. And then there is some quibble about, well, is it the arresting agency? The fact of the matter is that the statute refers to the arresting agency, but as a practical matter, Union Pacific Railroad's police don't have their own jail, and so they take them. Nor do many municipalities. They take the arrestee to the county jail, and it's the county jailers who fill out the, I don't know what you'd call them, the jail admission form. Correct, which leads me to another point with respect to whether or not Mr. Peterson should have been released. At that point in time, he's in the hands of the San Luis Obispo County Sheriff, not Officers at or Union Pacific. So if there's any wrong committed by his remaining in jail, which I don't concede and I don't think there was, that's on the hands of the San Luis Obispo County Sheriff, not Union Pacific. Do you even contest the fact or do you concede the fact that Zat was a state actor? No, I don't, Your Honor, and the reason being that under Penal Code 830.33, I believe, which defines the role of the authority of railroad police, their primary role is to protect railroad property. And while I will concede that, yes, they are not necessarily limited to only affecting arrests on railroad property. That is their primary role. So it's not a plenary grant of jurisdiction to wander around the state. But they are peace officers under that definition in the Penal Code. They are defined as peace officers. That means that they have the power to make arrests and take people to jail. But the Supreme Court has recognized that the power to arrest, which necessarily then includes the power to take to jail, has never been an exclusively public function. California recognizes citizens' arrests, but I don't know of too many cases where the citizens take the arrestee to the jail and turn them over to the sheriff. Law enforcement actions have not necessarily been determined to be an exclusive public function. In any case, it says that the Union Pacific police are not state actors? No, Your Honor, there is no such case. I didn't understand your answer to my colleague's question. Are you suggesting the state actor issue is not an issue we need to concentrate on here? No, I think the state actor issue is. I briefed it extensively because if there's no state action, then there's certainly no 1983 claim. You may have a tort law claim for battery, I guess. Even assuming a state actor, you believe these other issues would nonetheless win the case for you? That's correct. If we assume he was a state actor and he was assuming he was acting under code of law at the time of the arrest, our position is that the methods of force were appropriate and that the degree of force was appropriate, and there's no evidence to the contrary. Your Honor, briefly on the Minnell claims, because if there is state action and there is a 1983 analysis, there is no vicarious liability under Section 1983, and so a plaintiff would have to prove it up under Minnell. And there is nothing in the record to indicate that Union Pacific either knew or should have known that by hiring Mr. Zatt, that the result which is alleged to have happened, that is the use of excessive force, would more likely than not occur, which is what the standard is. They have to show deliberate indifference. Similarly, there's no evidence. In fact, the evidence is to the contrary, that the training he received was in any way deficient. In fact, the evidence, and it's in the record, is that the training Mr. Zatt received as a Union Pacific police officer and the training he received beforehand exceeds that which is required by post. Did he go through a post academy? He did. Okay. That's in the record, Your Honor. Okay. I'd let you both run over by about two and a half minutes. Thank you very much. Your Honor, just very briefly, if I may. You've got 30 seconds. There was a case that was submitted that I just discovered, Filarski v. Delia, which addresses the issue of whether or not an individual non-governmental employee can assert qualified immunity. And I direct your attention to page 9 of Justice Roberts' opinion, which discusses that historically persons engaged in police function, although not public employees, could assert qualified immunity. All right. Thank you very much. Mr. Parkinson, I'll give you a minute on rebuttal. Thank you, Your Honor. Thank you for putting my brief back on top. I think on the de minimis injury, appellees are asking the court to draw some fine lines here as to what constitutes substantial injury. In Palmer, it was weeks of bruising. In my client's case, it was three or four days. Where do you draw the line on that? Well, hasn't the Supreme Court said we've got to look at these under Graham on a case-by-case basis? We do. And when we run into factual disputes, we have to let the jury resolve those factual disputes. Well, what if it had been three hours of bruising and disappeared? Are you saying we still have to submit it to the jury? I think so, Your Honor. I think that when you are talking about what constitutes a substantial injury, I mean, you're getting on a slippery slope when you have to decide between a number of days. A lot of the law is on slippery slopes, isn't it? Sorry, Your Honor? A lot of the law is on slippery slopes. But somebody has to decide whether this is submissible to a jury or not. That's true. The other point is that characterizing my client's emotional and mental distress as being upset because he was arrested is a gross understatement. He mentioned nightmares for months. He mentioned being physically reacting emotionally when he saw police officers. You've got the eggshell skull plaintiff, huh? I think anybody in those circumstances would have experienced the same level of distress, Your Honor. Counsel, you have exceeded the minute I gave you. Thank you, Your Honor. Thank you both very much for the argument. The case just argued is submitted.
judges: Gilman, Tallman, Smith